UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TAHSYN MEKANI,

    Plaintiff,

Case No. 10-10992

v.

Paul D. Borman
United States District Judge

HOMECOMINGS FINANCIAL, LLC,
a GMAC Company, a Delaware Company,

    Defendant.
_____/

<u>OPINION AND ORDER GRANTING DEFENDANT HOMECOMINGS FINANCIAL, LLC'S
MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6) (DKT. NO. 5.)</u>

This matter comes before the Court on Defendant Homecomings Financial, LLC's Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (Dkt. No. 5.) Plaintiff filed a response (Dkt. No. 8) and Defendant filed a reply (Dkt. No. 10.) The Court heard oral argument on June 30, 2010. For the reasons that follow, the Court GRANTS Defendant's motion to dismiss.

**INTRODUCTION**

This case involves Plaintiff's claims that the terms of his mortgage loan and the origination of that loan by the Defendant Homecoming Financial, LLC ("Homecoming") were fraudulent and predatory. Plaintiff executed the mortgage on December 18, 2003 and did not begin to complain about the terms until sometime late in 2008. Plaintiff also claims that Defendant did not respond to a September 18, 2009, Qualified Written Request ("QWR"), sent by Plaintiff to Defendant,

1

requesting information about his mortgage under the Real Estate Settlement Practices Act ("RESPA").

Defendant responds that Plaintiff's claims are largely barred by the applicable statutes of limitations and that Defendant did in fact respond to Plaintiff's multiple QWRs with all of the information required to be provided under RESPA. Defendant also moves to dismiss Plaintiff's complaint for failure to plead fraud with particularity, failure to plead plausible claims of breach of contract and promissory estoppel and failure to adequately allege entitlement to quiet title or declaratory relief.

**I.   BACKGROUND**

On December 18, 2003, Plaintiff closed a mortgage loan with Homecomings in the amount of $465,000. (Compl. ¶ 5.) In connection with the transaction, Plaintiff executed a promissory note (the "Note") and a mortgage (the "Mortgage") relating to the property located at 5120 Autumn Ridge Court, West Bloomfield, MI 48323 (the "Property"). (Def.'s Mot. Exs. A, B.)[1] Plaintiff claims that at the time of the closing, the mortgage broker misrepresented various figures on the original loan documents, including Plaintiff's income, expenses, liabilities and including closing fees in the amount of $6,617.50 that were allegedly never properly disclosed to Plaintiff. (Compl. ¶ 5.) Although Plaintiff does not attach copies of the original loan application to which he refers in his

---

[1] Plaintiff did not attach a copy of the Note or the Mortgage to his Complaint. Indeed, Plaintiff did not even disclose the principal amount of the loan or the interest rate terms about which he complains. Defendant attaches copies of the Note and Mortgage to its Motion. The Court considers these documents in this motion to dismiss, although they are not formally attached to the Complaint, because they are referred to in the Complaint and are central to Plaintiff's claims. *See Greenberg v. Life Ins. Co. of Virginia,* 177 F.3d 507, 514 (6th Cir. 1999). *See also Weiner v. Klais & Co., Inc.*, 108 F.3d 86, 89 (6th Cir. 1997) (holding that "if the plaintiff fails to attach the written instrument upon which he relies, the defendant may introduce the pertinent exhibit" which becomes a part of the pleadings).

Complaint, Defendant attaches a copy to its motion which indicates that Plaintiff himself represented his base monthly income to be $20,000 and his monthly expenses to be $3,623.00. (Def.'s Mot. Ex. C.)

At the June 30, 2010 hearing on this matter, Plaintiff's counsel conceded that the relevant income and expense amounts were on the loan application when Plaintiff signed it under penalty of perjury.

Plaintiff also claims that he was not informed of various charges that were later assessed against him and was never advised of the variable rate loan, his recision rights, split charges and excess interest rate differentials. He also claims that various costs were "over inflated" on the HUD Settlement statement, including origination fees, appraisal fees, document preparation fees, broker processing fees, lender underwriting fees and a yield to premium adjustment. (Compl. ¶ 7.) Again, although Plaintiff does not attach a copy of the HUD Settlement Statement to which he refers to his Complaint, Plaintiff has attached a copy to its Response to Defendant's Motion. (Pl.'s Resp. Ex. I.)

Plaintiff also claims that his billings were sent with "outrageous charges that were never disclosed and deductions from payments were made in a manner that kept adding on various late charges and other costs." (Compl. ¶ 8.) Plaintiff also alleges that "Plaintiff was discriminated against by taking [sic] members of his class and applying for non-affordable loans from on [sic] application that falsely used inflated income to conceal a higher debt to income ratio." (Compl. ¶ 7.) Finally, Plaintiff claims that he or his agent sent to Defendant on January 29, 2009, and on numerous other dates, qualified written requests ("QWRs") pursuant to RESPA requesting certain information to which Defendant never adequately responded. (Compl. ¶¶ 10, 53-65.)

3

In fact Homecomings did respond to the January 29, 2009 QWR, and to other QWRs sent by Plaintiff, and provided Plaintiff with copies of: (1) the Note, (2) the Mortgage, (3) Plaintiff's payment history on the loan, (4) the HUD Settlement Statement, and (5) copies of the escrow analysis on Plaintiff's account. (Def.'s Mot. Exs. D, E and F.)

Plaintiff filed his Complaint on January 27, 2010, more than six years after the December 18, 2003 closing on his home. Defendant now moves for dismissal of Plaintiff's Complaint for failure to state a claim.

## II. STANDARD OF REVIEW

Fed. R. Civ. P. 12(b)(6) provides for the dismissal of a case where the complaint fails to state a claim upon which relief can be granted. When reviewing a motion to dismiss under Rule 12(b)(6), a court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directive, Inc. v. Trees*, 487 F.3d 471, 476 (6th Cir. 2007). But the court "need not accept as true legal conclusions or unwarranted factual inferences." *Id.* (quoting *Gregory v. Shelby County*, 220 F.3d 433, 446 (6th Cir. 2000)). "[Legal conclusions masquerading as factual allegations will not suffice." *Edison v. State of Term. Depot of Children's Serve.*, 510 F.3d 631, 634 (6th Cir. 2007). In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the Supreme Court explained that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level. . . ." *Id.* at 555 (internal citations omitted). The Supreme Court clarified, in *Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009), that:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has

> facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Id*. at 1949-50 (internal citation and quotation marks omitted). A plaintiff's factual allegations, while "assumed to be true, must do more than create speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to relief." *LULAC v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (citing *Twombly*, 127 S.Ct. at 1965). Thus, "[t]o state a valid claim, a complaint must contain either direct or inferential allegations respecting all the material elements to sustain recovery under some viable legal theory." *Bredesen*, 500 F.3d at 527 (citing *Twombly*, 127 S.Ct. at 1969). In addition to the allegations and exhibits of the complaint, a court may consider "public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the [c]omplaint and are central to the claims contained therein." *Bassett v. NCAA*, 528 F.3d 426, 430 (6th Cir. 2008) (citing *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001)); *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) ("[A] court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document.") (citations omitted). "Otherwise, a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document upon which it relied." *Weiner, supra*, 108 F.3d at 89.

## III. ANALYSIS

### A. The Statute of Limitations

**1. To the extent that Plaintiff's claims relate to conduct that occurred at the time of the origination of the loan on December 18, 2003, they are barred by the applicable statutes of limitations.**

Plaintiff's claims of civil conspiracy (Count III)[2], fraudulent misrepresentation (Count IV), fraudulent conversion (Count V),[3] promissory estoppel (Count VI), and breach of contract (Count VII) are all subject to a six-year statute of limitations. *See Boyle v. General Motors Corp.*, 468 Mich. 226, 230 (2003) (fraud); *Terlecki v. Stewart*, 278 Mich. App. 644, 653 (2008) (conspiracy); *Huhtala v. Travelers Ins. Co.*, 401 Mich. 118, 125 (1977) (breach of contract and promissory estoppel). Plaintiff's claim for violation of the Fair Housing Act (Count IX) is subject to a two-year statute of limitations. 42 U.S.C. § 3613(a)(1)(A) (providing that a claim under the FHA must be brought within two years of the occurrence of the alleged discriminatory act).

Defendant argues that "the alleged misconduct that gives rise to all of these claims occurred at or before the origination and closing of the subject loan," which occurred on December 18, 2003.

---

[2] A civil conspiracy, by itself, is not a cognizable claim but is defined by the tort that constitutes the underlying theory of liability, here fraud. *Roche v. Blair*, 305 Mich. 608, 614-616 (1978). Thus, Plaintiff's civil conspiracy claim is subject to the six-year statute of limitations which governs fraud claims. *Terlecki v. Stewart*, 278 Mich. App. 644, 653 (2008). In any event, Plaintiff has not responded to Defendant's motion to dismiss this claim, and the Court assumes he concedes this point and abandons the claim. Accordingly, Defendant is entitled to have the civil conspiracy claim dismissed because it has filed a responsive pleading and Plaintiff has failed to dispute the arguments or otherwise prosecute the claim. See Fed. R. Civ. P. 41.

[3] "Fraudulent conversion" as such is not a recognized cause of action in Michigan. *Avery v. Benke*, No. 268107, 268108, 2006 WL 2382426, at * 2 (Mich. App. Ct. Aug. 17, 2006). However, construed either as a conversion claim (three-year statute of limitation) or a version of a fraud claim (six-year statute of limitation) Plaintiff's claims relating to events surrounding the origination of his loan are time-barred.

(Def.'s Mot. 4.) Defendant refers specifically to the allegations regarding failure to disclose certain terms of the loan, inflating figures on Plaintiff's loan application, failing to inform Plaintiff of certain fees and charges, charging excessive fees and forcing Plaintiff into an unaffordable loan. (Compl. ¶¶ 20, 26-28.) To the extent that the allegations relate to conduct that occurred in this time frame, such claims are barred by the applicable statute of limitations. "The claim accrues at the time the wrong upon which the claim is based was done regardless of the time when damage results." MCL 600.5827.

Plaintiff cites *Boyle v. General Motors Corp.*, 250 Mich. App. 499 (2002) for the proposition that the statute of limitations begins to run when the cause of action is discovered. (Pl.'s Resp. 5.) However, this decision of the Court of Appeals was reversed by the Michigan Supreme Court in *Boyle, supra*, where the Court expressly rejected the application of such a "discovery rule" to claims of fraud or intentional misrepresentation: "The Court of Appeals erred in holding that the discovery rule applies to the accrual of actions for fraud. That holding directly contradicts *Ramsey* and *Thatcher* and ignores the plain language of M.C.L. § 600. 5813 and 600.5827." 468 Mich. at 231-232. *See also Lorimer v. Berrelez*, 331 F. Supp. 2d 585, 592-593 (E.D. Mich. 2004) (holding, as to a fraudulent misrepresentation claim under Michigan law, that the six-year statute of limitations "begins to run when the misrepresentation was perpetrated and not when the plaintiff discovered or should have discovered the misrepresentation.") (citing *Boyle, supra*). Accordingly, Plaintiff's claims filed on January 27, 2010, that relate to the failures to disclose and misrepresentations made at the time of the origination of his loan on December 18, 2003, are barred by the applicable statute

of limitations.[4]

### 2. Plaintiff has not sufficiently pled conduct beyond the loan origination period that would fall within the relevant statutory period.

Plaintiff alleges that: "Defendants through their mortgage servicing department began to assess excessive interest rate charges beyond the contractual amount allowed. . . . Defendants continued to assess illegal escrow fees, penalties, interest and other illegal charges beyond what was allowed for in the original contract." (Compl. ¶¶ 48-49.) As pled, Plaintiff's Complaint does not include the factual content, including relevant dates, to enable the Court to conclude that such a claim, for acts occurring within the statutory period, has been stated. The breach of contract claim, for example, does not state the nature or amount of the charges complained of and does not state how those charges exceeded what was actually contemplated under the contract or when such charges were assessed. It merely states, in conclusory terms, that Defendant imposed "illegal charges beyond what was allowed for in the original contract." It would be pure speculation for the Court to conclude that the acts complained of occurred within the statutory period.

With regard to Plaintiff's promissory estoppel claim, Plaintiff appears to be claiming that Defendant's conduct was separate and apart from the acts surrounding the closing of the loan, referring to Homecoming's more recent alleged "promise to Plaintiff to negotiate a modification or

---

[4] Nor are Plaintiff's claims appropriately analyzed under the "continuing wrong" rule, which applies only to claims of "continual tortious acts, not [] continual harmful effects from an original, completed act." *Terlecki, supra* 278 Mich. App. at 655. The billing statements and "correspondence" which were sent in furtherance of the terms of the original loan are not continual tortious acts but, if anything, continuing harmful effects of the original completed closing of the loan. Moreover, in *Blazer Foods, Inc. v. Restaurant Properties, Inc.*, 259 Mich. App. 241, 251 (2003), the court of appeals held that the continuing wrong doctrine had been applied only in nuisance, trespass and civil rights cases and refused to apply the doctrine outside of those specific contexts, rejecting the suggestion that the rule should apply to a breach of contract/tortious interference claim.

other equitable relief." (Compl. ¶ 42.) Plaintiff discusses this allegation in his response brief, stating:

> [T]he promise as set forth in Plaintiff's complaint relates to Defendant's Promise to work with Plaintiff for a modification of the mortgage contract when the Qualified Written Requests were first sent out. . . . Defendant corresponded and promised orally that they would work with Plaintiff on any problems. Over a period of almost one and one half years, they failed to respond to the Qualified Written Requests or negotiate in good faith. Based upon these efforts, Plaintiff held off from taking any legal action on the present matter and that is the substance of his reliance upon Defendant's promise.

(Pl.'s Resp. 10.)

To state a claim of promissory estoppel, Plaintiff must allege: "(1) a promise, (2) that the promisor should reasonably have expected to induce action of a definite and substantial character on the part of the promisee, and (3) that in fact produced reliance or forbearance of that nature in circumstances such that the promise must be enforced if injustice is to be avoided." *Novak v. Nationwide Mut. Ins. Co.*, 235 Mich. App. 675, 687 (1999). "A promise is a manifestation of intention to act or refrain from acting in a specific way, so made as to justify a promisee in understanding that a commitment has been made. The promise must be definite and clear, and the reliance on it must be reasonable." *Zaremba Equipment, Inc. v. Harco Nat'l Ins. Co.*, 280 Mich. App. 16, 41 (2008) (internal quotation marks and citations omitted).

Plaintiff has not provided sufficient facts to support its claim that Defendant "promised" to work with Defendant or that Plaintiff reasonably relied on such a promise, much less when such promise allegedly occurred. Some of Defendant's correspondence to Plaintiff in response to the QWRs encouraged Plaintiff, in the event he was facing financial difficulties, to contact Homecoming's loss mitigation department to discuss potential "loss mitigation options." (Def.'s Mot. Ex. D.) There is no evidence, however, of a "promise" to work with Plaintiff or even an

9

indication that Plaintiff ever contacted Defendant to explore his loss mitigation options as suggested by the letters. The statements in Defendant's letters regarding Plaintiff's loss mitigation options, when viewed in the context of the correspondence between the parties, are at most an overture to perhaps begin a dialog, but in no way constitute a clear and definite promise to "work with Plaintiff." To the contrary, Plaintiff's September 18, 2009 correspondence to Defendant proposing a negotiated settlement, and indicating frustration with the fact that Defendant had not attempted to settle the matter, suggests to the Court that Defendant never did agree to work with Plaintiff. (Pl.'s Resp. Ex. E.) *See Shaughnessy v. Interpublic Grp. of Cos., Inc.*, No. 09-12077, Slip Op. at 12 (E.D. Mich. June 28, 2010) (finding that language allegedly constituting a promise could not be selectively read in isolation from all of the relevant documentary evidence). Plaintiff's allegations merely state in conclusory terms the elements of a claim of promissory estoppel and fail to support that claim with any factual content. Counts III, IV, V, VI and VII of Plaintiff's Complaint fail to allege, with sufficient particularity, claims that fall within the statutory period and therefore are barred by the applicable statutes of limitation.

**B.      Plaintiff Has Failed to Plead Fraud With Particularity**

Defendant also argues that Plaintiff fails to plead fraud with particularity in any of its fraud related claims and offers this as a separate and independent basis to dismiss Plaintiff's claims based on fraudulent misrepresentation. To meet the particularity requirements of Rule 9(b), Plaintiff must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Frank v. Dana Corp.*, 547 F.3d 564, 569-70 (6th Cir.2008) (quoting *Gupta v. Terra Nitrogen Corp.*, 10 F. Supp. 2d 879, 883 (N.D.Ohio 1998)). At a minimum, Plaintiffs "must allege

10

the time, place and contents of the misrepresentations upon which they relied." *Id.* Further, to survive a Rule 12(b)(6) motion to dismiss, Plaintiffs' pleadings must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

Plaintiff's fraud claims derive from his claim of fraudulent misrepresentation which requires proof: "(1) [t]hat defendant made a material representation; (2) that it was false; (3) that when he made it he knew that it was false, or made it recklessly, without any knowledge of its truth, and as a positive assertion; (4) that he made it with the intention that it should be acted upon by plaintiff; (5) that plaintiff acted in reliance upon it; and (6) that he thereby suffered injury. Each of these facts must be proved with a reasonable degree of certainty, and all of them must be found to exist; the absence of any one of them is fatal to a recovery." *Hi-Way Motor Co. v. International Harvester Co.*, 398 Mich. 330, 336 (1976) (quoting *Candler v. Heigho*, 208 Mich. 115, 121 (1919)).

Plaintiff's Complaint fails to meet these basic pleading requirements. Paragraphs 25-33 set forth Plaintiff's allegations as they relate to fraud and state that Defendant "inflated various figures on the original loan application including but not limited to: (a) inflated income, (b) understated expenses, understated liabilities, understated debt to income ratio and other non-disclosed items as required by Federal law." (Compl. ¶ 27.) As Defendant argues, Plaintiff himself provided, and attested in writing to the veracity of, the very figures he now claims were inflated. It is difficult to see how Plaintiff can claim that he reasonably relied on his own misstatements, particularly when, as his counsel conceded at oral argument, Plaintiff signed the application attesting to the fact that the statements as to his income and liabilities were true. Defendant argues that to the extent that Plaintiff fraudulently fabricated his monthly income on the application, he cannot now seek to have

11

that agreement voided. *See Rose v. Nat'l Auction Grp., Inc.*, 466 Mich. 453, 463 (2002) (discussing the clean hands doctrine which forecloses relief "to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief, however improper may have been the behavior of the defendant") (internal citations, quotation marks and emphasis omitted).

Plaintiff does not deny that he read and signed the loan application. Plaintiff's counsel conceded this at oral argument. Plaintiff claims, however, that Defendant in fact possessed copies of Plaintiff's 2002 tax returns, which allegedly demonstrated that Plaintiff's income was in fact much lower than Plaintiff represented and that the figures on the loan application were false.[5] Plaintiff claims that he "hardly speaks English" and that he relied on the loan originator to place him in an affordable mortgage. (Pl.'s Resp. 6.) Plaintiff argues that "all income tax returns were provided to the originator, yet they placed on the loan inflated income figures as stated above." (*Id.*) In spite of his claims that his income tax returns substantiated that he could not afford the loan, Plaintiff continued to make payments on the loan for six years, "never fell behind in his payments" and is only "currently" (six years after closing) "having difficulty paying the mortgage." (Compl. ¶ 9.) Thus, Plaintiff received the $465,000 in proceeds in 2003 and the mortgage apparently was affordable from the closing through the next six years.

While Plaintiff states that "they" placed inflated figures on the loan application, Plaintiff does not deny that he verified and signed the loan application under penalty of perjury. He argues nonetheless that Defendant had an obligation to "verify the application figures by the use of the

---

[5] In the attachments to his Complaint which were prepared by the loan advisory group engaged by Plaintiff to investigate the instant loan, the loan advisor notes that the tax documents allegedly provided to Defendant at closing showed borrower's monthly income to be $-12,552.91 resulting in a debt to income ratio that exceeded 50% at the time of closing. (Compl. Ex. A, pp.2, 5.) The tax documents are not attached to the Complaint.

Internal Revenue Forms 4506t." (Pl.'s Resp. 6.) Plaintiff claims that "this is standard procedure which Defendant conveniently ignores." (*Id.*) But Plaintiff cites no authority for the proposition that Defendant had such an obligation or that this obligation overrides Plaintiff's obligation to truthfully provide information as to income and liability in his loan application. Plaintiff is arguing that Defendant should have discovered Plaintiff's lie and Defendant's failure to do so damaged Plaintiff. This is not logical or legally sustainable. "[I]t is inconceivable that an individual can represent to a lender that he is earning $3,500 a month when applying for a loan, obtain the loan from the lender, and then sue the lender because the applicant in fact had no income." *Saleh v. Home Loan Services, Inc.*, No. 09-10033, 2009 WL 2496682 at * 2 (E.D. Mich. Aug. 17, 2009). Plaintiff has not adequately alleged that Defendant made a misrepresentation nor that Plaintiff reasonably relied on any such alleged misrepresentation.

In paragraph 28 of the Complaint, Plaintiff claims that he was not informed of "various charges" and was not informed of the "variable rate note" and other provisions of the Note, which again he does not deny that he signed, and initialed every page. Plaintiff does not explain how any of these provisions were false, claiming only that he wasn't informed of them. With regard to his claims as to the fraudulent statements contained in the Note, Plaintiff states that the "closing official retained by the lender purposely flipped through documents in a very brief manner without explaining their contents." (Pl.'s Resp. 6-7.) But the "law presumes that one who signs a written agreement knows the nature of the instrument so executed and understands its contents." *Watts v. Polaczyk*, 242 Mich. App. 600, 604 (2000). Any other rule would render written instruments meaningless.

Plaintiff's Complaint fails to adequately allege the necessary elements of a claim of

fraudulent misrepresentation. Plaintiff fails to allege either that the representations were false or that he reasonably relied on them. While Plaintiff's claims of predatory and deceptive lending practices may be actionable under some other theory of liability, they are not adequately pled as fraudulent misrepresentation.

**C.      Plaintiff Has Failed to Allege Damages Sufficient to Sustain a Claim Under RESPA**

Plaintiff alleges that Defendant has violated the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601 et seq. ("RESPA"). Specifically, Plaintiff alleges that Defendant has "failed to respond in a proper and timely manner to Plaintiff's written requests for validation and correction of their account in violation of 12 USC Section 2605(e)." (Compl. ¶ 63.) Defendant asserts that it did in fact respond within the statutorily prescribed time and attach to its motion copies of its responses. (Def.'s Mot. Exs. D, E and F.)[6] Plaintiff states in his Complaint that Defendant was required to respond by March 29, 2009 but did not comply within the 60 day period. (Compl. ¶ 60.) The dispute appears to be related not to the fact of Defendant's response or its timeliness, but to its content. Plaintiff cannot dispute that Defendant in fact responded in a timely fashion to numerous requests from Plaintiff.

On November 21, 2008, Defendant provided copies of the accounts payment history, the Note, the Mortgage and the HUD-I Settlement Statement and indicated that Plaintiff had requested additional information relating not to servicing of the loan but to its origination which Defendant stated it was not obligated under RESPA to provide. (Def.'s Mot. Ex. E.) On February 11, 2009 Defendant responded to another request, indicating that the documents previously sent in November

---

[6] In fact Defendant sent most of the responses to the Loan Advisory Group whom Plaintiff had engaged to assist in the auditing of his loan. (Compl. ¶ 10; Compl. Ex. A.)

14

were the documents that related to servicing of the loan and that sending other documentation unrelated to servicing of the account would not be effective or appropriate. The February 11, 2009 letter also offered Plaintiff the option of contacting Defendant's loss mitigation department in the event that Plaintiff was having financial difficulties. (Def.'s Mot. Ex. D.) On March 13, 2009, Defendant again responded to another request, enclosing a copy of the February 11, 2009 response and again offering the services of the loss mitigation department. (Def.'s Mot. Ex. F.) On May 1, 2009, Defendant responded to yet another request and again enclosed copies of the payment history and transaction code list relating to Plaintiff's account, the Note, the Mortgage, the HUD-I Settlement Statement and copies of the escrow analysis relating to Plaintiff's account. (Def.'s Mot. Ex. F, p. 2.) This response explained that many of Plaintiff's requests were not service related or were subject to business and trade practices that were proprietary or confidential and stated that Defendant had provided all documentation required by law. The response further indicated that Defendant viewed "all other non-servicing related questions as extraneous and an abuse of the statute by counsel in an attempt to obtain information outside of formal discovery." (*Id.*) The May 1, 2009 response again offered Plaintiff the option of being considered for a workout option. Defendants responded again on June 1, 2009, June 24, 2009 and October 1, 2009 in a similar fashion. (Def.'s Mot. Ex. F.)

The section of RESPA which Plaintiff claims Defendant has violated provides that, following receipt of an inquiry, the servicer shall conduct an investigation and then provide the borrower with the information requested, or an explanation of why the requested information is unavailable or cannot be provided by the servicer. 12 U.S.C. § 2605(e)(2)(C)(i). If a loan servicer violates § 2605(e), § 2605(f) provides for the borrower's remedies which are conditioned upon actual damages

15

to the borrower. Plaintiff claims that Defendant has never adequately responded and has failed to send Plaintiff information that is required to be provided under RESPA.

It is undisputed that Defendant did in fact respond to Plaintiff's QWRs, but Plaintiff argues that the responses were inadequate. Plaintiff gives no further factual content to support the claim that the responses were inadequate and cites the Court to no authority in support of his claim that Defendant's responses were inadequate. Plaintiff's Complaint does not speak to the factual basis for the claimed inadequacy and Plaintiff's response to Defendant's motion states only that the responses "hardly qualify under the act." Plaintiff has not provided the factual content to plausibly suggest, as *Twombly* requires, that Defendant's responses were somehow inadequate.

Even if the Court were able to conclude that Plaintiff has adequately alleged that Defendant's responses were somehow inadequate, Plaintiff's RESPA claim fails for the additional reason that Plaintiff has alleged no actual damages attributable to Defendant's alleged failure to respond. In fact, Plaintiff does mention the concept of damages at all in his RESPA claim and does not speak to damages in his response to Defendant' motion, except to state that the damages cannot be determined until Plaintiff has an opportunity to conduct discovery on the claimed overcharges. (Pl.'s Resp. 12.) Because Plaintiff has completely failed to allege any causal link between Defendant's allegedly inadequate response to his QWRs and any actual damages suffered, his Complaint fails to plead a plausible RESPA claim. *See Byrd v. Homecoings Financial Network,* 407 F. Supp. 2d 937, 945-946 (N.D. Ill. 2005) (holding that plaintiff's RESPA claim failed as a matter of law where it did not allege actual damages); *Collier v. Wells Fargo Home Mortgage*, No. 04-086, 2006 WL 1464170 at * 3 (N.D. Tex. May 26, 2006) (on summary judgment, finding that plaintiffs had failed to allege damages relating specifically to the time period after plaintiffs sent their QWRs,

as distinct from damages flowing from the alleged improper servicing of their mortgage which had already occurred); *Webb v. Chase Manhattan Mtg. Corp.*, No. 05-0548, 2008 WL 2230696 at * 14 (S.D.Ohio May 28, 2008) (finding that even if plaintiff could establish a failure to respond under RESPA, plaintiff's claim would still fail because the damages alleged would have been incurred by Plaintiff prior to the dates on the correspondence alleged in her RESPA allegations). Plaintiff's Complaint is completely devoid of any allegations of damages resulting from Defendant's alleged failure to respond to Plaintiff's QWRs. *Compare Price v. American Servicing Co.,* 403 B.R. 775, 792 (Bankr. E.D. Ark. 2009) (on a motion for default judgment, holding that plaintiffs had sufficiently alleged actual damages on their RESPA claim by alleging that they had expended time and money in attempting to obtain the requested documents and that defendants' actions had caused them to fear losing their home). Plaintiff's Complaint fails to state a cognizable RESPA claim.[7]

### D.      Plaintiff Has Failed to Allege a Quiet Title Claim

Defendant is correct in its assertion that Plaintiff in an action to quiet title bears the burden of establishing a prima facie case of title. *Boekeloo v. Kuschinski*, 117 Mich. App. 619, 628-629 (1982). Plaintiff has not sustained this burden. Plaintiff's claim to quiet title "merely attacks the foreclosure process and does not address a legitimate title dispute." *Anaya v. Advisors Lending Grp.*, No. 09-1191, 2009 WL 2424037 at * 7 (E.D. Cal. Aug. 5, 2009). Plaintiff has cited no authority for his claim to quiet title under the facts of this case, and offers only the conclusory

---

[7] Nor has Plaintiff alleged sufficient facts to sustain a "pattern or practice claim" under 12 U.S.C. § 2605(f)(1)(B), which allows recovery of statutory damages upon a showing of a pattern or practice of noncompliance. The Complaint does not even mention the "pattern or practice" claim, and does not refer to section 2605(f)(1)(B). Plaintiff's statement in his responsive brief that the Court should look to the "Senate investigation proceedings in Washington which is currently establishing a pattern and practice of abuses of [sic] which Plaintiff plans on submitting as evidence once obtained," does not save the pleading deficiency on any such claim. (Pl.'s Resp. 12.)

17

allegations that Defendant is not the holder of the Note (despite the fact that Plaintiff does not contest the authenticity of the Note and Mortgage in favor of Defendant which Plaintiff concedes he executed) and engaged in fraudulent activity at the closing. (Compl. ¶ 20.) Plaintiff's failure to "provide [any] legal or factual justification for [his] quiet title claim other than the conclusory allegation that the foreclosure was wrongful, invalid, and voidable" necessitates dismissal of his quiet title claim. *Urbina v. Homeview Lending Inc.*, 681 F. Supp. 2d 1254, 1262 (Aug. 13, 2009). *See also Greene Benefit Mtg. Corp.*, No. 08-12968, 2009 WL 56056 at * 10 (E.D. Mich. Jan. 8, 2009) (finding that plaintiff's allegation that he was entitled to have his foreclosure set aside, the mortgage voided based on its fraudulent creation and title quieted in his name, without more, failed to provide grounds entitling him to relief, citing *Twombly*).[8]

**E.     Plaintiff's Fair Housing Act Claim Must be Dismissed with Prejudice.**

Plaintiff claims, in Count IX, that Defendant violated the Fair Housing Act, 42 U.S.C. § 3601 et seq., by failing to disclose certain information at the time of the closing of the loan and by failing to respond to Plaintiff's QWR. (Compl. ¶¶ 67-72.) As discussed above in section IIIA1, Plaintiff's claims that relate to conduct that occurred at the time of the closing of the loan on December 18, 2003, are barred by the applicable statutes of limitations, including Plaintiff's claim under the Fair Housing Act (Count IX), which is subject to a two-year statute of limitations. 42 U.S.C. § 3613(a)(1)(A) (providing that a claim under the FHA must be brought within two years of the occurrence of the alleged discriminatory act).

With respect to Plaintiff's claim that Defendant violated the FHA by failing to respond to

---

[8] Plaintiff's wholly derivative claim for declaratory relief, which Plaintiff concedes is a procedural device by which substantive claims are vindicated, also fails to state a cognizable claim.

his QWRs, Plaintiff provides no legal support for such a theory of liability. Moreover, Plaintiff has not responded to Defendant's motion to dismiss this claim, and the Court assumes he concedes this point and abandons the claim. Accordingly, Defendant is entitled to have the claim dismissed because it has filed a responsive pleading and Plaintiff has failed to dispute the arguments or otherwise prosecute the claim. See Fed. R. Civ. P. 41.

IV.   **CONCLUSION**

For the foregoing reasons, the Court GRANTS Defendant's motion to dismiss Plaintiff's Complaint (Dkt. No. 5) and DISMISSES Plaintiff's Complaint with prejudice.

**IT IS SO ORDERED.**

                                    S/Paul D. Borman
                                    **PAUL D. BORMAN**
                                    **UNITED STATES DISTRICT JUDGE**

**Dated:  July 6, 2010**

### CERTIFICATE OF SERVICE

**Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on July 6, 2010.**

                                    S/Denise Goodine
                                    **Case Manager**